**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| |
|---|
| JOHN HAMILTON STINSON, for himself And on behalf of all similarly situated individuals,<br><br>      Plaintiffs,<br><br>   v.<br><br>ADVANCE AUTO PARTS, INC.,<br><br>      Defendant. |

Civil Action No. 7:12CV433

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY**
**APPROVAL OF SETTLEMENT, APPOINTMENT OF CLASS COUNSEL,**
**CERTIFICATION OF THE SETTLEMENT CLASS, AND FOR**
**APPROVAL OF THE FORM, MANNER AND ADMINISTRATION OF NOTICE**

COMES NOW the Plaintiff, John Hamilton Stinson (hereafter "Plaintiff" or "Stinson")

by counsel, and with the joinder and consent of the Defendant, Advance Auto Parts, Inc.,

(hereafter "Advance Auto") by counsel, and in support of their Motion for Preliminary Approval

of Settlement, supply this memorandum of law:

## I.  INTRODUCTION

Plaintiff submits this Memorandum of Law in support of his Motion for Preliminary

Approval of Settlement, Certification of the Settlement Class, and Approval of the Form, Manner

and Administration of Notice.  A final motion supporting the fairness of the proposed settlement

will be submitted after members of the Settlement Class have received notice and have had an

opportunity to object, comment or opt-out, prior to the Court's final approval hearing.

## II.  CASE BACKGROUND

**A.       Plaintiff's Claims**

On November 16, 2012, Mr. Stinson filed an Amended Class Complaint in this action alleging that Advance Auto Parts, Inc., willfully failed to comply with the pre-adverse action notification requirements in 15 U.S.C. § 1681b(b)(3) prior to taking adverse employment action against him. The original class action complaint was filed on September 11, 2012, and contained two counts.  As the litigation initially developed, Advance Auto's counsel voluntarily produced early documents that enabled the Plaintiff to file an Amended Complaint dismissing one count altogether and leaving only the § 1681b(b)(3) claim.  The Fair Credit Reporting Act (FCRA) requires a user of a consumer report (such as a background check) for an employment purpose to make certain specific disclosures before it uses the report for an adverse action (hiring or firing decisions).

The section provides:

Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates —
(i) a copy of the report; and
(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

Section 1681g(c)(3) tasks the Consumer Financial Protection Bureau, and previously the Federal Trade Commission, with creating and making available a specific form summarizing various consumer protections and requirements provided in the FCRA.  Thus, § 1681b(b)(3) requires that an employer who intends to use a consumer report in making an adverse hiring/firing decision provide the consumer (i.) a copy of the report it will use and (ii.) the current CFPB/FTC prescribed FCRA "Summary of Rights" form. In this case, Advance Auto did not send Mr. Stinson a lawful summary of rights.

In this case, Mr. Stinson alleged that Advance Auto failed to supply him with a copy of his consumer report or send him a lawful pre-adverse action notice required by the FCRA. Mr. Stinson claims he had no meaningful opportunity to dispute objectively false information in his report, namely criminal convictions that did not belong to him. When Mr. Stinson applied for a job, Advance Auto obtained his background check from a third party, USIS (HireRight), that also generated and mailed the untimely and non-compliant notices to Mr. Stinson.

Advance Auto denied Stinson's claim and further denies any wrongdoing and any liability to him or to any putative class members.

**B.      The State of Litigation and the Settlement Negotiations**

The Parties began both formal and informal discovery early in this matter on nearly all issues, which resulted both in the filing of an Amended Complaint and an agreement to seek an early mediation date from the Hon. Robert Ballou, United States Magistrate Judge. Significant formal discovery was obviated by the substantial informal exchanges. Discovery, though informal, was sufficiently significant that the parties were able to fully assess the strengths and weaknesses of each other's case. Counsel exchanged multiple emails and telephone calls to discuss all areas of dispute, even as they prepared to engage in formal mediation with Judge Ballou.

On December 10, 2012, under the supervision of Judge Ballou, the parties conducted arms-length and contentious negotiations for the better part of an entire day. At the end of the settlement conference, the parties agreed in principle to a settlement structure and amount to resolve the Litigation. The mediation was attended in Roanoke, Virginia, by the parties and counsel from both sides. The Parties now ask the Court to preliminarily approve the Proposed Settlement and authorize distribution of Settlement Notice to the Class.

### III. PROPOSED SETTLEMENT

**A.     The Class**

The Parties propose the following settlement class definition:

> all natural persons residing in the United States or its territories, (a) who applied for an employment position with Defendant or any of its subsidiaries, (b) as part of this application process were the subject of a consumer report obtained by a Defendant, (c) where that consumer report contained a criminal public record or credit item that would disqualify the person from such position under Defendant's written hiring policies, (d) which consumer was not then approved or hired for the position, (e) and to whom Defendant did not provide a copy of the consumer report and other disclosures state at 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the date the employment decision is first noted in Defendant's records, provided, however, that the Settlement Class shall exclude: (i) all persons who timely and validly request exclusion from the Settlement Class; (ii) Defendant's attorneys; (iii) Plaintiff's attorneys; (iv) any judge who has presided over either mediation or disposition of this case and the members of his immediate family.

There are approximately 2571 Settlement Class Members.

**B.     Consideration Provided to the Settlement Classes Under the Settlement Agreement**

The Settlement Agreement requires Advance Auto to pay $360,000.00 into a Settlement Fund for the benefit of the Settlement Class and therefore provides a substantial monetary recovery for the Settlement Class.  Within five business days of the entry of an Order of Preliminary Approval, Advance Auto will establish an escrow or similar account at TowneBank, a federally insured financial institution, which shall constitute the common fund out of which the class member distributions will be made.  If the settlement is approved, the Settlement Fund will provide each Settlement Class Member with a gross settlement amount of $138.00 (before deduction of attorneys' fees and costs). There is no claim-in requirement.  No coupon.  All class members are paid cash. Within 120 days after the date on the Payment Notice, any excess funds remaining in the Settlement Fund are going to be returned to Advance Auto Parts and within 5

business days thereafter, Advance Auto Parts will pay the same amount that was returned to the Boys & Girls Club of Southwest Virginia, subject to approval by the Court.

### C.      The Release

The release exchanged in the case is narrow.  The Settlement Agreement calls for the release of only FCRA claims related to FCRA §1691b(b)(3). The named plaintiff and each class member who did not opt-out of the Class Settlement releases 15 U.S. C. § 1681b(b)(3)(A)(ii) claims identified in the Settlement Agreement.

### D.      Notice to the Class

The Parties have agreed to a notice program designed to reach as many Class Members as possible.     The Parties will provide direct-mail Notice to the Class, First Class postage prepaid. The names and addresses for that Notice came from the information provided by the class members when they completed employment applications. They will also be updated and checked against the United States Postal Service's National Change of Address database.

A copy of the proposed Settlement Notice is attached.  It includes a telephone number Class Members can call during regular business hours to get additional information regarding the Settlement.  Class members will be able to speak to a live person. The Notice Administrator shall be responsible for maintaining the telephone number.  The Supreme Court has concluded that notice sent by first class mail to each class member satisfies due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985). In this case, the Class is small enough that the Parties have agreed that Settlement Class Counsel will discharge the duties of Class Administrator, including drafting and mailing the Class Notice, establishing a website where Class Members can obtain information concerning the Class Action Settlement, publishing a phone number where Class Members can call for information, receiving and recording exclusion requests and

objections.  If Final Approval is granted at the conclusion of the Class Notice period, Settlement

Class Counsel will, as Class Administrator, cause the checks to be mailed to the Class Members.

### E.      Class Action Fairness Act Notice

Advance Auto will cause notice of the proposed settlement to be served under the

Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1715.  The CAFA Notice will

be sent via overnight courier to the Attorney General of the United States and to the

attorneys general of all states and the District of Columbia where Advance Auto

maintained retail business stores.  Pursuant to the statute, the CAFA Notice will be sent

within 10 days after the filing of the Settlement Agreement with the Court.

### F.      Incentive Awards and Attorneys' Fees and Expenses

Stinson will apply for an incentive award as the Class Representative to compensate him

for his efforts in prosecuting this case including retaining counsel, assisting in discovery, and

keeping abreast of the litigation.  Advance Auto agrees not to oppose the application for the

incentive awards, provided that the award does not exceed Five Thousand dollars ($5,000.00).

In order to best represent the Class' interests, the Parties exclusively focused on

achieving a settlement and pointedly did not negotiate or even address the issue of attorneys'

fees and expenses (or incentive awards) before reaching agreement on all material settlement

terms.   Accordingly, the Settlement Agreement and Release provides that:  (1) Class Counsel

shall apply to the Court for an award of attorneys' fees and reimbursement of reasonable

expenses, which is separate and apart from the Class Settlement, and (2) Class Counsel agree not

to seek fees or costs in excess of the agreed-upon percentage of the common funds.  Not later

than ten days prior to the date on which the Final Fairness Hearing takes place, Class Counsel

will move the court for approval of such fees and costs, which Advance Auto will not oppose.

## IV.   ELEMENTS FOR CERTIFICATION OF SETTLEMENT CLASSES

Federal jurisprudence strongly favors resolution of class actions through settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one.  Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  FED. R. CIV. P. 23(e).   Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).   The Court may approve a settlement only after a hearing and on finding that it is fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).  Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)).

The Fourth Circuit employs a bifurcated analysis for Rule 23(e) approval, mandating that the Court separately consider the fairness of the settlement from its adequacy. *See In re Jiffy Lube*, 927 F.2d at 158-59.  Regarding fairness, the Court must evaluate the Settlement against the following criteria:  (1) the posture of the case when the settlement was reached, (2) the extent of discovery conducted, (3) the circumstances surrounding the negotiations, and (4) the experience

of class counsel in the area of the litigation. *Id.* at 159. The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.*

### A.    Consideration of the Rule 23(a) and (b) Elements

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be conditionally certified for settlement purposes. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  In addition, Rule 23(c)(5) expressly authorizes the division of a class into subclass, as the settlement proposes here.  The subclass are "each treated as a class under this rule" and therefore must each meet the class certification requirements.  Fed. R. Civ. P. 23(c)(5).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class and, for the reasons that follow, the Settlement Class and Subclass should be certified.

### 1.    Numerosity

"There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d

34, 35 (4th Cir. 1978).   In applying this rule, courts have consistently held that joinder is impracticable and numerosity is thus satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to class with fewer than 100 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (stating that a class of 18 members met numerosity requirement); *Pitt v. City of Portsmouth,* 221 F.R.D. 438, 444 (E.D. Va. 2004) (numerosity requirement met by "several hundred" class members); *Jeffreys v. Communic'n Workers of Am.,* 212 F.R.D. 320, 322 (E.D. Va. 2003) (granting class certification to class having "at least 60 members" and stating that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

There is no question that the class meets the numerosity requirement.   There are approximately 2571 Settlement Class Members.

These numbers are certainly sufficient to establish that joinder is impracticable.

**2.    Commonality**

"Commonality requires that there be at least one question of law or fact common to the members of the class.  Commonality is a liberal standard, and the fact that there are some factual variances in individual grievances among class members does not defeat commonality." *Morris v. Wachovia Secs., Inc.*, 223 F.R.D. 284, 292 (E.D. Va. 2004) (citations omitted).  Not all factual or legal questions raised in the litigation need be common so long as there "is one question of law or fact common to the class." *Jeffreys*, 212 F.R.D. at 322.

Here, by definition, members of the Settlement Class share the same questions of law and fact. The members of Settlement Class are alleged to be the victims of policies and procedures whereby Advance Auto, in violation of the FCRA, did not give a lawful notice to consumers

when Advance Auto obtained consumer reports for employment purposes. Furthermore, the suit alleges not only were the class members not provided a lawful notice, they were deprived of their right to be correctly and timely notified of their rights sufficiently far enough in advance of Advance Auto taking adverse action against the consumer, based in whole or in part on information from the consumer report.

The theories of liability as to all Settlement Class members, therefore, arises from the same practices and present basic questions that are common to all members of the Settlement Class.

### 3.    Typicality

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).  Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim.  That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 466-67.

Here, Plaintiffs' claims arise from Advance Auto's practices concerning the provision of consumer reports for employment purposes and Advance Auto's procedures for handling consumer disputes about these reports.  As discussed in the previous section, these are the same claims advanced on behalf of all of the Settlement Class Members.  Plaintiffs are all collectively Settlement Class Members.  Plaintiffs' claims thus rest on the same legal and factual issues as those of the Settlement Class Members.  Consequently, in seeking to prove their claims,

Plaintiffs will necessarily advance the claims of Settlement Class Members.  This is the hallmark of typicality.  *See Deiter v. Microsoft Corp.*, 436 F.3d at 466 (citing Fed. R. Civ. P. 23(a)(3)).

### 4.  Adequacy of Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.  That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the Class.  *See, e.g., Mitchell-Tracey v. United Gen. Title Ins.*, 237 F.R.D. 551, 558 (D. Md. 2006) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998)).

The Plaintiff fairly and adequately represents the interests of the Settlement Class.  They have retained qualified and experienced attorneys to represent them in this matter.  The attorneys have substantial experience in class action and consumer litigation and are qualified to conduct the litigation.[3] Moreover, Plaintiffs have no interests that are antagonistic to the interests  of  the Settlement Class, and are unaware of any actual or apparent conflicts of interest between them and the Settlement Class.

### B.  Rule 23(B)(3) Considerations

The proposed settlement contemplates a class certification permitting opt-outs pursuant to Rule 23(b)(3).  An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied, and in addition, certain other conditions under Rule 23(b)(3) are met:

---

[3] Class Counsel has extensive experience in both FCRA and class action litigation, having been involved in now numerous large FCRA class actions.  *See e.g. Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases.").

(3)    the Court finds that the questions of law or fact common to the members   of   the

Class predominate over any questions affecting only individual members,

and    that a Class action is superior to other available methods for the fair and

efficient adjudication of the controversy.

## 1.    Predominance

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law and fact shared by the Settlement Class Members must "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class are "sufficiently cohesive to warrant adjudication by representation."   *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004)(citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997));   *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *Talbott v. GC Servs., Ltd. P'shp*., *supra*, 191 F.R.D. at 105  citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974).   Predominance is satisfied where the resolution of class members' individual claims depends on examining common conduct by a defendant. *See Jeffreys,* 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, *i.e.* whether:  (1) Advance Auto failed to provide lawful, timely notice when issuing consumer reports for employment purposes; (2) whether Advance Auto's notice violated the FCRA.   Because these issues are common, and indeed are determinative of Settlement Class Members' claims, they far outweigh

the importance of any individual issues particular to Settlement Class Members.

This conclusion accords with the findings of courts examining predominance in the context of similar consumer claims, alleging that plaintiffs were the victims of common practices. *See, e.g.*, *Talbott* ("Here, common questions predominate because of the standardized nature of [defendant's] conduct...")(Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices); *see also Amchem* 521 U.S. at 625 (noting that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud... ."). In this case, the allegations are that the Defendant failed to provide timely or legally adequate FCRA notices prior to taking an adverse action based in whole or in part on a consumer report.

### 2.      Superiority

Finally, this Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b)(3).  *Lienhart*, *supra*, 255 F.3d at 147; *In re A.H. Robins*, 880 F.2d at 728.  The factors to be considered here in determining the superiority of the class mechanism are (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.  *Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 220 (D.Md.1997);  *Newsome v. Up To Date Laundry, Inc.,* 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed superior. *Talbott*, 191 F.R.D. at 106.  In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."  *Haynes v.*

*Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).  To determine superiority, courts also consider the anticipated amount of recovery for each plaintiff, noting that class actions are particularly appropriate where multiple lawsuits are infeasible because of the small amount of any individual remedy.  See Advisory Committee Note to 1996 Amendment to Rule 2.

"In determining whether a class action is the superior method of resolution, the following facts are relevant":

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. *Jeffreys,* 212 F.R.D. at 323 (quoting Fed. R. Civ. P. 23(b)(3)).

In *Jeffreys*, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." *Jeffreys,* 212 F.R.D. at 323.  The same is true here.  Common issues predominate among the Settlement Class. Further, the individual claims of Settlement Class Members are relatively small, thus providing little incentive for individual litigation, and the Settlement Class Members are dispersed over multiple states.[4]  *See also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

---

[4] Manageability need not be considered in certifying a settlement class.  *See Amchem*, 521 U.S. at 620 (1997) (stating that a trial court may disregard management issues in certifying a settlement class).

individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.2d 338, 344 (1997)).

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals. Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied.

Accordingly, the Court should conditionally certify the Settlement Class for settlement purposes.

## V.     THE SETTLEMENT IS APPROPRIATE FOR PRELIMINARY APPROVAL

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158 (4th Cir.1991). At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2). *See Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *Jiffy Lube*, *supra* at 158-59. However, at the preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval." *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994), citing *In Re Mid-*

*Atlantic Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1384 (D. Md. 1983).

### A.    The Settlement Is Fair

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness:  (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue.  *Jiffy Lube*, 927 F.2d at 158-59.

The Action has been vigorously litigated by the parties and sufficient discovery has been obtained by Plaintiffs and Defendants to assess the strength of their respective claims and defenses.

Further, the Parties reached a settlement through the help of Magistrate Judge Ballou in the course of contentious and arms-length negotiations. The settlement conference with Judge Ballou was the culmination of months of back-and-forth exchanges between counsel. Consequently, the circumstances surrounding the parties' settlement negotiations also support a finding that the settlement is fair. Courts have found that, where a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair.  *See, e.g., City P'ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass 2000).  Even after the parties agreed to terms in principle following the settlement conference, both parties dickered over the specific terms of the Settlement Agreement until final language was reached and the Agreement was endorsed.

Finally, counsel is highly experienced in consumer class action litigation, such as the Action before the Court, and endorse the settlement as fair and adequate under the circumstances.  Courts recognize that the opinion of experienced and informed counsel in favor

of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g.*, *In re MicroStrategy Inc. Sec. Litig.*, 148 F. Supp.2d 654, 665 (E.D. Va. 2001); *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996); *Rolland*, 191 F.R.D. at 6.

### B.     The Settlement Terms Are Adequate and Reasonable

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, and (5) the degree of opposition to the proposed settlement, (6) the posture of the case at the time settlement was proposed, (7) the extent of discovery that had been conducted, (8) the circumstances surrounding the negotiations, and (9) the experience of counsel in the substantive area and class action litigation. *See In re Jiffy Lube*, 927 F.2d at 159; *Clark v. Experian Info. Sols., Inc.*, 2004 WL 256433 (D.S.C. 2004).

### 1.     Plaintiff's claims are heavily disputed

Advance Auto has disputed Plaintiffs' claims since the inception of this case, and even convinced Plaintiff to voluntarily dismiss one cause of action. Because the Class claims are dependent upon recovery of statutory and punitive damages, any recovery for the Class must be predicated on a finding that Advance Auto willfully violated the FCRA. *See* 15 U.S.C. § 1681n(a). Although a reckless violation of the FCRA satisfies the willfulness prerequisite for statutory and punitive damages, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), Class members here are still faced with the burden of proving Defendant's conduct was indeed

reckless.  This burden is magnified by the fact that Plaintiff's claims here — whether non-compliant notices were sent to consumers — would be sufficient to allow a recovery of statutory and punitive damages.

The class claim is also weakened by a number of factors.  The basic claim could be vulnerable to jury nullification. Many class members almost by definition possessed some type of derogatory public record, such as a criminal conviction.  The rights protected in the relevant FCRA provisions are critical, but it is possible that a jury could find them merely technical or immaterial rights.

> **2.      Continuing this litigation will result in significant additional and unjustifiable burdens on the class, Defendant and the Court.**

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further.  The level of additional costs would significantly increase as Plaintiff began preparations for the certification argument and if successful an inevitable interlocutory appeal attempt.  Thus, the likelihood of substantial future costs favors approving the Proposed Settlement. *Horton*, 855 F. Supp. at 833.

> **3.      Class Member reaction to the Settlement is not available at this time**

Because Class Members have yet to receive notice of the Proposed Settlement, their reaction cannot yet be gauged.  However, despite the size of the class identified to date, to counsel's knowledge, no consumer has filed or is pursuing his or her own individual claim for the targeted FCRA violations.

> **4.      The case was at a proper posture for Settlement**

The case had been litigated for only a few months before it was resolved, which was largely due to the early and open exchange of documents.  This early discovery also enabled the parties to narrow the area of disagreement.  Though each side represented their position with

zeal, this was a case in which frequent, open and professional communication between the opposing sides enabled the parties to flesh out an appropriate remedy.   The Plaintiff had a complete understanding from formal and informal discovery as to what process and procedures were used and what defenses as to liability and as to class certification would be faced.

Given this analysis and the possibility that Plaintiff and class members ultimately will not prevail on their claims at trial or on appeal, the *Jiffy Lube* factors weigh heavily in favor of the adequacy and reasonableness of the settlement.   Each member of the Settlement Class will receive a monetary gross recovery of $138.00 simply for a delay in receiving a FCRA notice and for the Defendants' failure to ensure that the notice was current and complete. The limitations of action period in the FCRA is the lesser of five years from the date of the violation or two years from its discovery.  15 U.S.C. § 1681p.  If the Court grants preliminary approval, class members will receive notice explaining the terms of the Settlement Agreement and their right to object or opt-out. Those class members who believe that their cases are even more valuable or who have actual damage claims in excess of these expected ranges can opt-out and tender those claims on an individual basis. While the degree of opposition to the Settlement Agreement cannot be known with certainty, the lack of any other competing class cases supports the strength of the settlement and the likelihood that it will stand.   For these reasons, the opinion of all counsel involved is that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of the claims alleged.

## IV.   CONCLUSION

The Parties have reached a Settlement in this case that provides genuine relief to Class Members. The Settlement is an excellent result considering the contentiousness of the litigation and the challenges faced by the Plaintiff.  Each Class Member is entitled to a cash recovery as a

result of the Settlement, regardless of whether they were aware Defendants' conduct potentially violated the FCRA or whether they suffered actual harm. There is no claims process. In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal satisfy the Fourth Circuit's strictures for preliminary approval.

Accordingly, the Plaintiff, with Advance Auto's consent, ask the Court for an Order, substantially similar to the Proposed Order filed concurrently with this Motion.

Respectfully submitted,

By: _____/s/_____
        Leonard A. Bennett, VSB #37523
        Counsel for Plaintiff
        CONSUMER LITIGATION ASSOCIATES, P.C.
        763 J. Clyde Morris Blvd., Suite 1-A
        Newport News, Virginia 23601
        (757) 930-3660 – Telephone
        (757) 930-3662 – Facsimile
        E-mail:  lenbennett@cox.net

        Susan M. Rotkis, VSB #40693
        CONSUMER LITIGATION ASSOCIATES, P.C.
        763 J. Clyde Morris Blvd. Suite 1-A
        Newport News, Virginia 23601
        Telephone –  (757) 930-3660
        Facsimile – (757) 930-3662
        E-mail:  srotkis@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June 2013, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to all counsel of record.

Kevin Holden
Attorney at Law
**Jackson|Lewis LLP**
Two James Center
1021 East Cary Street, Suite 1200
Richmond, Virginia  23219
804.212-2888 | Direct
804.649.0404 | Main
kevin.holden@jacksonlewis.com

_____/s/_____
Leonard A. Bennett, Esq.VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
(757)  930-3660  –  Telephone
(757) 930-3662 – Facsimile
E-mail:  lenbennett@clalegal.com